**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RINCON MUSHROOM CORPORATION OF AMERICA,<br><br>                              Plaintiff,<br>    vs.<br>BO MAZZETTI; JOHN CURRIER; VERNON WRIGHT; GILBERT PARADA; STEPHANIE SPENCER; CHARLIE KOLB; DICK WATENPAUGH; DOE CO.; DOE I; DOE II ,<br><br>                              Defendants. | CASE NO. 09cv2330-WQH-POR<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the following motions filed by Defendants: Motion to Dismiss Complaint (Doc. # 17); Ex Parte Application for Request for Judicial Notice (Doc. # 45); and Ex Parte Application Requesting Judicial Notice of Supplemental Authorities (Doc. # 50).

**I.    Background**

This action concerns tribal regulation of non-Indian fee simple land located within the boundaries of the reservation of the Rincon Band of Luiseno Mission Indians. Defendants are tribal officials sued in their individual and official capacities. (Compl. ¶¶ 4-5, Doc. # 1).

On October 20, 2009, Plaintiff Rincon Mushroom Company of America ("RMCA") initiated this action by filing the Complaint. (Doc. # 1).

### A. Allegations of the Complaint

In 1982, Plaintiff, a non-Indian corporation, purchased from a non-Indian five acres of land within the exterior boundary of the Rincon Tribal Reservation. *Id.* ¶ 9. In 1960, the property was "allotted and conveyed out of Tribal ownership," and since that time, "the property continuously has been, and now remains, non-Indian fee land." *Id.* (quotation omitted). Plaintiff owned the land in fee simple until 1999, when it sold the land to Marvin Donius, also a non-Indian. *Id.* ¶ 11. Plaintiff "receiv[ed] as partial consideration ... a promissory note in a substantial amount, together with a 'carry-back' deed of trust." *Id.* Donius and Plaintiff used the land as a "non-tribal mixed use commercial facility," leasing parts of the land to various other businesses and residents, and grew mushrooms as well as other produce themselves. *Id.* at ¶ 13. "The property is located in an 'open' part of the Rincon Reservation, across a major San Diego County highway ... from the Rincon Tribe's public casino." *Id.* ¶ 10.

On March 15, 1960, the Rincon Tribe enacted Articles of Association, which state that the "Rincon Tribal Business Committee ... shall have jurisdiction over the lands within the boundaries of the Rincon Reservation." *Id.* ¶ 19. "In ... April 2007, ... the Rincon Tribe enacted a Tribal Environmental Policy Ordinance that ... purportedly placed under the governmental jurisdiction of the Tribe the subject parcel, on the asserted basis that the Tribe's regulatory authority extended to and included all land within the exterior boundaries of the Rincon Reservation." *Id.* ¶ 20 (quotations omitted). "[T]he Rincon Tribe enacted an Environmental Enforcement Code that as revised on or about July 10, 2007 purported to extend tribal environmental regulatory authority over and as to [the] subject property, on the basis of the Tribe's claim of such authority over all lands within the exterior boundaries of the Rincon Indian Reservation." *Id.* ¶ 21 (quotations omitted). "On ... September 30, 2008, these defendants caused the Rincon Tribe to enact a Tribal Court Jurisdiction Ordinance that purported to claim regulatory as well as *in personam* and subject matter adjudicative jurisdiction over non-tribal member plaintiff, non-tribal member Donius, and as to subject non-tribal fee property, ... and also purports to extend the Tribe's Territorial Jurisdiction over any

fee lands within the external boundaries of the Rincon Reservation...." *Id.* ¶ 22 (quotations omitted).

The first count of the Complaint seeks a judicial declaration that "any prospective or future actual or attempted enforcement by these defendants of" the above-referenced Articles of Association, Tribal Environmental Policy Ordinance, Environmental Enforcement Code, and Tribal Court Jurisdiction Ordinance is "facially unconstitutional, unconstitutional as applied, and/or illegal, and/or entirely unenforceable, pursuant to applicable provisions of federal and California law, both with respect to plaintiff as well as concerning subject property." *Id.* ¶ 23(a). "[P]laintiff contends that this Court should find, declare and adjudge that neither the Rincon Tribe nor the above-named Tribal defendants presently have, nor in the future could as a matter of law have, any regulatory or adjudicative authority of any nature whatever over or as to plaintiff and/or over or as to subject property...." *Id.* ¶ 23(d).

The second count of the Complaint seeks the issuance of "a mandatory injunction requiring and ordering that the above-named Tribal defendants desist and refrain from any further actual or attempted enforcement, prospectively and in the future, of any and all purported Rincon Tribe regulatory or adjudicative authority over or as to plaintiff and/or over or as to subject property." *Id.* ¶ 29.

"[A]t least four years ago, and continuing to the present date, the Rincon Tribe ... and from time to time the Tribal defendants ... have devised, and have attempted to implement and effectuate, a plan ... to acquire ... 'on the cheap' [Plaintiff's] five-acre parcel." *Id.* ¶ 14. The plan "has included various efforts by these defendants to diminish and depreciate the value of [the] subject property." *Id.* ¶ 15. In December 2005 and January 2006, "defendants embarked upon successful efforts to 'chill' and ultimately kill a proposed purchase of subject property by FF Realty, LLC–a purchase which would have been consummated but for defendants' action." *Id.* ¶ 46. Following an October 2007 wildfire which damaged the subject property along with other properties on the reservation, "defendants, in an effort to persuade [San Diego Gas & Electric] not to re-energize the property ..., falsely represented that there was no 'easement for electrical service' on the property, such easement being required to allow re-

energization." *Id.* ¶ 49(b). On December 29, 2007, "defendants attempted to prevent a 'clean-up' of those portions of the five-acre parcel destroyed by the [October 2007] fire ... by ordering employees and representatives of ... a contractor for the County of San Diego to cease work and leave the property." *Id.* ¶ 49(c). By letter dated January 14, 2008, Defendants "falsely represented" to the California Highway Patrol, the AAA Auto Club of Southern California, and a firm known as "Automotive Specialists," that "land use [of the subject property] is under the jurisdiction of the Rincon Band, and that such purported jurisdiction was exclusive," and that Donius was "operating as an unauthorized business and may violate federal and tribal law." *Id.* ¶ 49(d)-(f). Defendants made similar "misrepresentations" other times during 2008 in letters to other entities, including the United States Environmental Protection Agency and San Diego Gas & Electric. *Id.* ¶ 49(g); *see generally id.* ¶ 49. Defendant's actions have prevented Donius from using the property and Donius has therefore stopped paying Plaintiff money it is owed from the sale of the land. *Id.* at ¶ 34.

The Complaint alleges ten counts seeking monetary relief: (1) intentional interference with contract; (2) intentional interference with advantageous economic relationship; (3) conspiracy to intentionally interfere with contract; (4) conspiracy to intentionally interfere with advantageous economic relationship; (5) conspiracy to deprive plaintiff of equal protection and equal privileges and immunities under 42 U.S.C. § 1985(3); (6) civil RICO; (7) civil RICO conspiracy; (8) negligent interference with contract; (9) negligent interference with advantageous economic relationship; and (10) violation of 42 U.S.C. § 1983.

### B. Procedural History

On December 11, 2009, Defendants filed the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(7). (Doc. # 17). On March 25, 2010, the Court heard oral argument on the motion. (Doc. # 31). On December 11, 2009, January 28, 2010, April 7, 2010, September 1, 2010 and September 3, 2010, Defendants filed evidence in support of the Motion to Dismiss. (Doc. # 17, 28, 33-34, 45-50, 52). On January 11, 2010, March 31, 2010 and September 14, 2010, Plaintiff filed evidence in opposition to the Motion to Dismiss. (Doc. # 21, 25, 32, 53).

## II.     Standing

On April 9, 2010, the Court issued an Order which stated:

> On March 25, 2010, at oral argument on Defendants' Motion to Dismiss, both parties asserted that Donius assigned his right to sue to RCMA. However, as Plaintiff conceded, nothing in the record before this Court establishes that Donius assigned this right to RCMA. On the record before this Court it is not clear that Plaintiff has standing to pursue its claims on behalf of Donius. If the plaintiff before a federal court lacks standing to pursue its claims, the court lacks jurisdiction to proceed. A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction. RCMA is therefore ORDERED TO SHOW cause why this case should not be dismissed for lack of standing.

(Doc. # 35 at 1-2 (citations omitted)).

On April 16, 2010, Plaintiff filed the declaration of Nicholas Litchin, Plaintiff's president. (Doc. # 37-38). Litchin states that Plaintiff sold the land at issue to Donius in August of 1999 in exchange for "a promissory note in a substantial amount coupled with a 'carry-back' deed of trust." (Doc. # 37 at 2). The deed is attached to the declaration as Exhibit A. Litchin states that Donius timely made his payments on the promissory note until October 2006. *Id.* at 2-3. Litchin states that the Tribe began asserting regulatory jurisdiction over the property in 2005, which prevented Donius from selling the land for $1.9 million to a developer. *Id.* at 3. Litchin states that Donius has been unable to operate his business since 2006 due to Defendants' actions and has made no payments to Plaintiff since October 23, 2006. *Id.* Litchin states that Donius owes Plaintiff $527,719.00 on the promissory note. *Id.* at 4. Litchin states that Plaintiff has agreed to forego foreclosure and waive a balloon payment which would otherwise have been due on December 10, 2006 in exchange for Donius's cooperation in the litigation and assignment of the proceeds of the litigation to Plaintiff. *Id.* at 4-5.

Plaintiff also submitted the declaration of Donius. (Doc. # 25). Donius states that the property at issue was damaged by a wildfire in October of 2007. *Id.* at 3. After the fire, Donius states that Defendants prevented the San Diego County Department of Public Works from cleaning up the damage to the property by standing in front of their equipment and asserting to the crew that Defendants had the authority to bar them from the site. *Id.* Donius states that Defendants have prevented San Diego Gas & Electric from restoring power to the property by asserting that the Tribe has regulatory jurisdiction over the property and falsely

stating that Donius' "use of electricity is unsafe." *Id.* at 7. Donius states that he cannot sell the property because "no purchaser will buy this property without a firm written assurance of the availability of electrical power to the property." *Id.* at 10.

Plaintiff contends that it has standing to challenge Defendants' regulatory actions "because plaintiff has sufficiently suffered economic injury ... that ... directly flows from and is a proximate result of the impairment and deprivation of plaintiff's legal right to use and financially benefit from subject real property by reason of tribal defendants' improper and wrongful acts." (Doc. # 38 at 3). On March 31, 2010, Defendants sent Plaintiff a Notice of Violations which lists ten violations of tribal zoning ordinances. (Doc. # 33 at 77-81). Plaintiff contends that this "recent action by the tribal defendants to prosecute alleged violations of tribal law on the property directly against plaintiff" has further injured Plaintiff, although Plaintiff concedes that standing is determined based on the facts as they existed at the time of filing. (Doc. # 38 at 5). Plaintiff contends that its injury was caused by Defendants because Donius and Plaintiff are the targets of regulatory action. *Id.* Plaintiff contends that the injury is redressable by this Court because a declaratory judgment would remove the barrier to Donius's activities. *Id.* at 9-10. Plaintiff contends that Donius's assignment of part of the proceeds of successful litigation or part of the sale proceeds from the land once the Tribe's regulatory jurisdiction over the land is adjudicated is sufficient, on its own, to give Plaintiff standing to pursue this litigation. *Id.* at 10-11.

Defendants contend that Plaintiff and Donius, who has filed a separate lawsuit before this Court, "are trying to pass the ball between them in order to manipulate a result where this Court has jurisdiction to hear the case while avoiding the requirement that tribal remedies be exhausted." (Doc. # 43 at 4-5). Defendants contend that Plaintiff "has failed to show any cognizable injury to a legally protected interest." *Id.* at 6. Defendants contend that the "post-complaint issuance by the Rincon Environmental Department of Notice of Violations upon [Plaintiff] is of no consequence to the standing question herein." *Id.* at 8. Defendants contend that Plaintiff cannot establish redressability because Plaintiff cannot establish that preventing the Tribe from asserting regulatory jurisdiction over the land would enable Donius to sell or

use the land. *Id.* at 12.

Article III standing is a jurisdictional prerequisite which must be met before a federal court may adjudicate a case. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (citations and internal quotation marks omitted). In essence, a plaintiff must establish a sufficient stake in the outcome of the litigation to justify the "invocation of federal-court jurisdiction." *Baker v. Carr*, 369 U.S. 186, 204 (1962).

Plaintiff has established that it has suffered an "injury in fact," in that it has lost income from payments on the promissory note it holds as a result of Donius's inability to use or sell the property. Plaintiff's loss of income is both "concrete and particularized" and "actual" in that Plaintiff has not received payments on the promissory note for over four years. In addition to the interest Plaintiff has in the land via the promissory note, due to Donius's default, Plaintiff has a right of possession of the property which it has agreed not to exercise in exchange for Donius's cooperation in the litigation and a share of the proceeds. Plaintiff has established that there is a causal connection between the injury and Defendants' conduct. Plaintiff has produced evidence that its loss of income is directly traceable to Defendants' actions in asserting regulatory jurisdiction over the property and preventing San Diego Gas & Electric from restoring power to the property. Plaintiff has established redressability. A declaratory judgment from this Court in Plaintiff's favor would likely redress the situation by making clear that the Tribe lacks regulatory jurisdiction over the property. Such a declaratory judgment would allow Donius to use or sell the land, allowing him to pay off the promissory note Plaintiff holds. Damages would redress Plaintiff's loss of income.

The Court concludes that Plaintiff has satisfied the requirements to establish Article III standing in this matter.

### III. Motion to Dismiss

Defendants' Motion to Dismiss is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction), and 12(b)(7) (failure to join a party under Rule 19). (Doc. # 17). A Rule 12(b)(1) motion asserting lack of subject matter jurisdiction may be either a facial attack on the sufficiency of the pleadings or a factual attack on the basis for a court's jurisdiction. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The court need not presume the truthfulness of the plaintiff's allegations." *Id.* (citing *White*, 227 F.3d at 1242). However, "[j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983).

Motions pursuant to Federal Rule of Civil Procedure 12(b)(2) challenge personal jurisdiction. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). A plaintiff must "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* "[U]ncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).

#### A. Sovereign Immunity

Defendants contend they are tribal officials "imbued with tribal sovereign immunity" which bars this suit. (Doc. # 17-1 at 13). Defendants contend that all acts were taken in their official representative capacity and within their authority as tribal officials. Defendants contend that Plaintiff's suit is "clearly directed at influencing the behavior of Tribal officials and the Tribe" which is barred by sovereign immunity. *Id.* at 14. Defendants contend that the

County of San Diego has recognized that the Tribe has regulatory authority over the land at issue, so a ruling from this Court that Defendants acted *ultra vires* would create a regulatory void. *Id.* at 18.

Plaintiff contends that Defendants are not entitled to assert tribal sovereign immunity because the Tribe lacks regulatory jurisdiction over the land at issue, so all attempts to regulate the land exceed the scope of tribal authority and are *ultra vires*. (Doc. # 21 at 13-14). Plaintiff contends that allegations that Defendants acted "under an authority not validly conferred" in violation of federal law defeats sovereign immunity at the pleadings stage. *Id.* at 15-16.

"Non-Indians may bring a federal common law cause of action under 28 U.S.C. § 1331 to challenge tribal [] jurisdiction." *Elliot v. White Mountain Apache Tribal Court*, 566 F.3d 842, 846 (9th Cir. 2009). "Under the doctrine of *Ex Parte Young*, immunity does not extend to [tribal] officials acting pursuant to an allegedly unconstitutional statute." *Burlington Northern & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)). "In determining whether *Ex Parte Young* is applicable to overcome the tribal officials' claim of immunity, the relevant inquiry is only whether [plaintiff] has alleged an ongoing violation of federal law and seeks prospective relief." *Id.* (citation omitted).

Plaintiff has adequately alleged that Defendants were acting pursuant to an invalid tribal ordinance which exceeds the scope of the Tribe's regulatory jurisdiction. The first two counts of the Complaint seek prospective relief. Accordingly, Defendants' motion to dismiss the first two counts of the Complaint based on sovereign immunity is denied.[1] *See id.*; *see also Burlington N. R.R. Co. v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir. 1991) ("[T]ribal sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly

---

[1] Defendants contend that Plaintiff's claims in counts one and two are analogous to the claims asserted by the plaintiff in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 282 (1997) (holding that an exception to *Ex Parte Young* exists when the "suit is the functional equivalent of a quiet title action which implicates special [state] sovereignty interests"). Defendants have cited to no cases–and the Court is aware of none–which have applied the exception to *state* sovereign immunity announced in *Coeur d'Alene* to *tribal* sovereign immunity. *Cf. Duke Energy Trading & Marketing, L.L.C. v. Davis*, 267 F.3d 1042, 1054 n.8 (9th Cir. 2001) ("The extent to which *Coeur d'Alene* is limited to its particular and special circumstances cannot be overstated.) (quotation omitted).

acting in violation of federal law."), *overruled on other grounds by Big Horn County Elec. Coop., Inc. v. Adams*, 219 F.3d 944, 953 (9th Cir. 2000). Because the Court holds that Plaintiff must exhaust his tribal court remedies, *see infra*, the Court does not reach the issue of whether counts three through twelve of the Complaint (which seek monetary relief) should be dismissed based upon sovereign immunity. *Cf. Sharber v. Spirit Mountain Gaming*, 343 F.3d 974, 976 (9th Cir. 2003) ("[T]he tribal exhaustion requirement also applies to issues of tribal sovereign immunity....").

### B. Exhaustion of Tribal Remedies

#### 1. Contentions of the Parties

Defendants contend that Plaintiff was required to exhaust available tribal remedies before filing a federal court claim. (Doc. # 17 at 22-23). Defendants contend that the Tribe has jurisdiction to regulate Plaintiff's property under the "second *Montana* exception," because "[t]he presence of fire hazards on the Subject Property is a serious threat to the Tribe's economic security in its Casino" and "conduct on [Plaintiff's property] threatens to contaminate the Tribe's groundwater supply that serves the Reservation's members and commercial activities, such as the Casino." (Doc. # 28 at 4).

Plaintiff contends that exhaustion is not required because it is clear that the Tribal Court lacks jurisdiction. (Doc. # 21 at 20-21). Plaintiff contends that the Tribe lacks regulatory jurisdiction over the property at issue because the property is non-Indian land held in fee simple and tribes generally do not have jurisdiction over such lands. Plaintiff contends that the exceptions to this general rule do not apply because Plaintiff has not consented to jurisdiction and because the activity on the land does not threaten Tribal sovereignty.

#### 2. *Montana*'s Second Exception

Tribal governments have been divested of sovereignty over "relations between an Indian tribe and nonmembers of the tribe." *Montana v. United States*, 450 U.S. 544, 564 (1981) (quotation omitted). Tribal governments have no jurisdiction over non-members "beyond what is necessary to protect tribal self-government or to control internal relations." *Id.* Tribes have some authority to regulate nonmembers on tribal lands, but as a general rule,

1 tribes may not regulate nonmembers on non-Indian land within the boundaries of the
2 reservation. *Id.* at 564-65. There are two exceptions to that general rule; only the second
3 exception is at issue in this case: "a tribe may exercise 'civil authority over the conduct of
4 non-Indians on fee lands within the reservation when that conduct threatens or has some direct
5 effect on the political integrity, the economic security, or the health or welfare of the tribe.'"
6 *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 128 S. Ct. 2709, 2720 (2008)
7 (quoting *Montana*, 450 U.S. at 565). This exception is "limited," and "cannot be construed in
8 a manner that would swallow the rule or severely shrink it." *Id.* (quotations omitted). The
9 conduct at issue "must do more than injure the tribe, it must imperil the subsistence of the
10 tribal community." *Id.* at 2726 (quotation omitted). "The burden rests on the tribe to establish
11 one of the exceptions to *Montana*'s general rule that would allow an extension of tribal
12 authority to regulate nonmembers on non-Indian fee land." *Id.* at 2720.

### 3.  Exhaustion

There is a general rule that if a non-Indian defendant is haled into a tribal court and asserts that the tribal court lacks jurisdiction, the defendant must exhaust tribal remedies before seeking to enjoin the tribal proceeding in federal court. *See Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845 (1985). Even when there is no pending proceeding in tribal court, a nonmember plaintiff may not sue in federal court asserting that the tribe lacks regulatory authority over nonmember actions taken on non-Indian land within a reservation without exhausting tribal court remedies. *See Burlington N. v. Crow Tribal Council*, 940 F.3d 1239, 1246 (9th Cir. 1991); *see also Sharber*, 343 F.3d at 976 ("The absence of any ongoing litigation over the same matter in tribal courts does not defeat the tribal exhaustion requirement."). "Exhaustion is prudential; it is required as a matter of comity, not as a jurisdictional prerequisite." *Boozer v. Wilder*, 381 F.3d 931, 935 (9th Cir. 2004).

Plaintiff contends that "the *Strate* exception makes the tribal court exhaustion doctrine inapplicable under the facts of this case." (Doc. # 21 at 20). The "*Strate* exception" provides that exhaustion is not required "'[w]hen ... it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana*'s main rule,' so the

exhaustion requirement 'would serve no purpose other than delay.'" *Nevada v. Hicks*, 533 U.S. 353, 369 (2001) (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 459-60, n.14 (1997)).[2] When determining "whether it is plain that the tribal court lacks jurisdiction," a court considers whether "jurisdiction is colorable or plausible." *Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 848 (9th Cir. 2009) ("If jurisdiction is colorable or plausible, then the exception does not apply and exhaustion of tribal court remedies is required.") (quotations omitted).

The Court of Appeals for the Ninth Circuit has held that "threats to water rights may invoke inherent tribal authority over non-Indians" pursuant to *Montana*'s second exception. *Montana v. U.S. Envtl. Prot. Agency*, 137 F.3d 1135, 1141 (9th Cir. 1998) ("*Montana II*"). "A tribe retains the inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the health and welfare of the tribe. This includes conduct that involves the tribe's water rights." *Id.* (quotation omitted). Similarly, tribes have a "strong interest" in "prevention of forest fires, and preservation of its natural resources" which could plausibly support tribal court jurisdiction pursuant to *Montana*'s second exception. *Elliott*, 566 F.3d at 850; *cf. id.* ("[E]ven if we applied the two *Montana* exceptions without regard to the Supreme Court's instruction that ownership of the land may be dispositive in some cases, we reach the same conclusion: In the circumstances of this case, we cannot say that the tribal court plainly lacks jurisdiction.") (holding that it is not plain that a tribal court lacked jurisdiction over a nonmember for

---

[2] There is a second exception to the exhaustion requirement, which applies "when an assertion of tribal court jurisdiction is 'motivated by a desire to harass or is conducted in bad faith.'" *Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 847 (9th Cir. 2009) (quoting *Nevada*, 533 U.S. at 369). In opposition to the Motion to Dismiss, Plaintiff has not contended that this exception is applicable, although Plaintiff's Complaint alleges that Defendants "have attempted to implement and effectuate, a plan ... to acquire ... 'on the cheap' [Plaintiff's] five-acre parcel" (Doc. # 1 ¶ 14). Even if Plaintiff had properly raised the argument in opposition to the Motion to Dismiss, the evidence in the record is not sufficient to "prove[] that enforcement of the statutory scheme was the product of bad faith conduct or was perpetuated with a motive to harass." *A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1417 (9th Cir. 1986) ("This exception to the exhaustion requirement ... may not be utilized unless it is alleged and proved that enforcement of the statutory scheme was the product of bad faith conduct or was perpetuated with a motive to harass. No such proof appears in the record."); *see also Elliott*, 566 F.3d at 847 (exception inapplicable because "there is no evidence of bad faith or harassment in the record").

1  violating tribal regulations which prohibit setting a fire without a permit on tribal land).

2  Defendants have submitted evidence indicating that conduct on Plaintiff's property
3  "pose direct threats to the Tribe's groundwater resources." (Minjares Decl. ¶ 29, Doc. # 52).
4  Defendants also have submitted evidence that "[c]onditions on the Subject Property during the
5  [2007] Poomacha Fire contributed to the spread of wildfire from that property to Tribal lands
6  across the street on which the Casino is located." (Mazzetti Decl. ¶ 15, Doc. # 17-2).
7  Although Plaintiff disputes this evidence, Defendants have shown that conduct on Plaintiff's
8  property plausibly could threaten the Tribe's groundwater resources and could contribute to
9  the spread of wildfires on the reservation. This showing is sufficient to require exhaustion,
10 given the relief requested by the first two counts of the Complaint.

11 In the first count of the Complaint, Plaintiff requests that the Court "declare and adjudge
12 that neither the Rincon Tribe nor the above-named Tribal defendants presently have, nor in the
13 future could as a matter of law have, any regulatory or adjudicative authority of any nature
14 whatever over or as to plaintiff and/or over or as to subject property." (Doc. # 1 ¶ 23(d)). The
15 second count of the Complaint seeks the issuance of "a mandatory injunction requiring and
16 ordering that the above-named Tribal defendants desist and refrain from any further actual or
17 attempted enforcement, prospectively and in the future, of any and all purported Rincon Tribe
18 regulatory or adjudicative authority over or as to plaintiff and/or over or as to subject
19 property." *Id*. ¶ 29. The declaratory and injunctive relief requested make no exception for
20 "conduct [that] threatens or has some direct effect on the political integrity, the economic
21 security, or the health or welfare of the tribe." *Montana*, 450 U.S. at 565.

22 Given the breadth of the declaratory and injunctive relief requested by Plaintiff, there
23 is a "colorable or plausible" claim to tribal regulatory and tribal court jurisdiction pursuant to
24 *Montana*'s second exception. *Elliott*, 566 F.3d at 848; *cf. Montana II*, 137 F.3d at 1141.
25 Although *Montana*'s second exception should not "be construed in a manner that would
26 swallow the rule or severely shrink it," *Plains Commerce Bank*, 128 S. Ct. at 2720, neither
27 should it be construed in a manner that would eliminate the exception entirely. Because tribal
28 court jurisdiction is plausible, "principles of comity require [federal courts] to give the tribal

1  courts a full opportunity to determine their own jurisdiction in the first instance." *Elliott*, 566
2  F.3d at 850-51.  The Court concludes that Plaintiff must exhaust tribal remedies prior to
3  asserting its claims in this Court.

4        The Court has the discretion to dismiss or stay this action while Plaintiff exhausts its
5  tribal court remedies. *See Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 948
6  (9th Cir. 2008) ("As a matter of discretion, a district court may either dismiss a case or stay the
7  action while a tribal court handles the matter.") (citing *Nat'l Farmers*, 471 U.S. at 857).
8  Plaintiff has not asserted that the statute of limitations would bar Plaintiff from asserting its
9  claims in a later-filed action post-exhaustion. *Cf. Sharber*, 343 F.3d at 976 ("[D]ismissal might
10 mean that [plaintiff] would later be barred permanently from asserting his claims in the federal
11 forum by the running of the applicable statute of limitations.  Under the circumstances, the
12 district court should have stayed, not dismissed, the federal action pending the exhaustion of
13 tribal remedies.").  Defendants' attempts to assert regulatory jurisdiction over Plaintiff and the
14 property at issue are ongoing, and Plaintiff requests prospective relief in counts one and two
15 of the Complaint.

16       Donius has filed an essentially identical Complaint against the same Defendants in
17 another action pending before this Court, *Donius v. Mazzetti*, S.D. Cal. Case No. 10cv591-
18 WQH-POR.  As discussed above, issues have been raised concerning Plaintiff's standing in
19 this case.  If the Court dismisses each action, Plaintiff and Donius (who are represented by the
20 same counsel) will have the opportunity to refile any claims which remain after exhaustion in
21 a single action, which potentially would eliminate any doubt regarding standing and would
22 better conserve judicial resources.  The Court finds that this weighs in favor of dismissal.

23       The Court takes judicial notice of the civil complaint filed against Plaintiff and Donius
24 in the Intertribal Court of Southern California by the Rincon Tribe on July 30, 2010.  (Doc. #
25 45, Ex. A).  The complaint pending in Tribal Court raises issues related to the claims in
26 Plaintiff's Complaint in this action.  The fact that there is a pending proceeding in Tribal Court
27 weighs in favor of dismissal of this action. *See Atwood*, 513 F.3d at 948 ("Because the parties
28 do not dispute that the ... issue is still pending before the Tribal Court, the district court

1 properly exercised its discretion and dismissed this case due to Plaintiff's failure to exhaust
2 tribal court remedies.").

3       The Court concludes that this action should be dismissed due to Plaintiff's failure to
4 exhaust tribal remedies.

**IV.  Conclusion**

6       IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for failure to exhaust
7 tribal remedies is GRANTED.  (Doc. # 17).  Except as discussed above, the Court does not
8 reach the other issues raised by the Motion to Dismiss.

9       The Ex Parte Application for Request for Judicial Notice (Doc. # 45) and Ex Parte
10 Application Requesting Judicial Notice of Supplemental Authorities (Doc. # 50) are
11 GRANTED.

12       The Clerk of the Court shall close this case.

DATED: September 21, 2010

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge